FILED
COURT OF APPEALS
DIVISION II

2013 SEP -4 AM 10: 15

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| In re the Welfare of<br><br>R.H., R.A., T.A., T.H., N.R., and Z.R.,<br><br>Minor Children. | No. 43580-2-II<br>Consolidated with Nos. 43590-0-II;<br>43594-2-II; 43684-1-II; 43690-6-II; 43694-9-II<br><br><br>PUBLISHED OPINION |

QUINN-BRINTNALL, J. — In this case, we address how RCW 13.36.040, the guardianship statute the legislature enacted in 2010, influences parental termination actions under RCW 13.34.180(1). The juvenile court entered orders terminating Bobby Adolphus's parental rights to his three sons, R.H., T.A., and R.A. Adolphus appeals the termination orders, arguing that the juvenile court erred by denying his timely motion for a continuance to allow him to present evidence of the availability of a relative guardianship placement and that the State failed to prove several of the statutory elements required for termination of parental rights under RCW 13.34.180(1).[1] We agree that the juvenile court erred by denying Adolphus's timely motion to continue, thereby failing to properly address whether continuation of Adolphus's relationship

---

[1] Adolphus raises several other constitutional and evidentiary arguments. Because we reverse and remand based on the juvenile court's error denying Adolphus's motion for a continuance, we do not address Adolphus's other arguments.

diminished his children's prospects for early integration into a stable and permanent home. We reverse the juvenile court's orders terminating Adolphus's parental rights and remand for a new trial. In addition, we impose, under a separate order, a monetary sanction on Adolphus's counsel, Jordan B. McCabe, for making material misrepresentations to this court regarding the record in this case.

## FACTS

Winter Howland has six children: T.H., R.H., T.A., R.A., N.R., and Z.R. In March 2009, the Department of Social and Health Services (DSHS) removed all six children from Howland's care. Adolphus is R.H., T.A., and R.A.'s father.[2] At the time of the removal, Adolphus had visitation with his children on some weekends but was not the primary residential parent. DSHS considered placing the children with Adolphus but chose not to because of safety concerns related to Adolphus's alcohol and marijuana use, criminal history, and concerns regarding his girlfriend's mental health, criminal history, and history with Child Protective Services (CPS). On May 6, the juvenile court entered agreed orders of dependency as to both Howland and Adolphus.

More than two years later, DSHS petitioned for the termination of Adolphus's parental rights on October 21, 2011. The termination trial was set for May 3, 2012. Prior to the termination hearing, the children's paternal aunt was identified as a potential guardianship placement for the children. On April 5, Adolphus moved to continue the termination hearing to allow DSHS to complete the aunt's home study. Adolphus's continuance motion was heard on April 18. The juvenile court agreed with the State's argument that whether the children would

---

[2] T.H.'s and N.R. and Z.R.'s fathers failed to respond to notice regarding the pending termination and their parental rights were terminated prior to trial and are not a part of this appeal.

be able to be placed with their aunt was immaterial to whether the State could prove all of the required elements at the termination trial and denied the motion.

After trial, the juvenile court granted DSHS' petition to terminate Adolphus's parental rights. Adolphus and Howland appealed. A commissioner of this court considered the appeal on an accelerated basis under RAP 18.13A, affirmed the termination of Howland's parental rights, and referred Adolphus's appeal to a panel of judges.

ANALYSIS

Adolphus argues that the trial court erred by failing to grant his motion to continue the termination trial until after the aunt's home study could be completed and DSHS determined whether the aunt was available as an appropriate guardianship placement for the children. In 2010, the legislature created a "more flexible alternative to parental termination—guardianship under RCW13.36.040." *In re Guardianship of K.B.F.*, No. 43922-1-II, 2013 WL 2606570, at *3 (Wash. Ct. App. June 11, 2013). In this case, we must determine how the new guardianship statute influences the potential termination of parental rights under RCW 13.34.180(1). Specifically, whether the availability of a guardianship placement is material to the trial court's finding that the State proved that continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home. We hold that an identified guardianship is material to this determination. Therefore, the trial court erred by denying Adolphus's timely motion to continue the termination trial until after the aunt's home study could be completed.

In January 2012, the aunt came forward as a potential guardianship placement for the children. Approximately a month before trial, Adolphus filed a motion to expedite the aunt's

3

home study or to continue the termination trial.[3] The juvenile court heard Adolphus's motion on April 18, two weeks before trial.

Adolphus argued that without the results of the home study, the record before the juvenile court would be incomplete because "[p]lacement with the maternal [sic] aunt presents the option of permanency for the children that does not sever the children's relationship with their father." Clerk's Papers at 118. At the time of the motion, the aunt's background checks had been completed and DSHS had initiated the home study process. The aunt still had to complete a Parents Resources for Information Development Education (PRIDE) class and the home study process before the State could consider her as a guardianship placement for any of the children. The State told the trial court that whether the children would be able to be placed with the aunt was immaterial to whether it could prove all of the elements of termination at trial. The juvenile court agreed with the State and denied Adolphus's motion to continue the termination trial.

We review a decision to deny a continuance for manifest abuse of discretion. *In re Dependency of V.R.R.*, 134 Wn. App. 573, 580-81, 141 P.3d 85 (2006). The juvenile court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). The juvenile court "takes into account a number of factors, including diligence, due process, the need for an orderly procedure, the possible effect on the trial, and whether prior continuances were granted." *V.R.R.*, 134 Wn. App. at 581. Denial of a motion to continue violates due process if the parent can show

---

[3] We do not address the portion of Adolphus's motion requesting that the juvenile court order the State to expedite the aunt's home study. However, we note that it will rarely, if ever, be the trial court's place to dictate how the State should manage its time or resources.

"either prejudice by the denial or the result of the trial would likely have been different if the continuance was granted." *V.R.R.*, 134 Wn. App. at 581.

Parents have a fundamental liberty and privacy interest in the care and custody of their children. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). Because of the constitutional interests at stake in a termination proceeding, parents are afforded greater due process rights than in dependency proceedings or other proceedings to determine the custody or placement of children (i.e., dissolutions, parent plan modifications, etc.). *See In re Dependency of R.W.*, 143 Wn. App. 219, 223, 177 P.3d 186 (2008) (when determining placement under a dependency, the best interests of the children is the primary factor to be considered by the court); RCW 26.09.260(1) (allowing modification of a parenting plan if there has been a substantial change in circumstances, modification is in the best interests of the child, and modification is necessary to serve the best interests of the child). In contrast, the juvenile court may terminate parental rights only when the State has proved the six statutory factors in RCW 13.34.180(1)(a)-(f) by clear, cogent, and convincing evidence.[4]  RCW 13.34.190(1)(a)(i).

---

[4] RCW 13.34.180(1) requires the State to prove
(a) [t]hat the child has been found to be a dependent child;
(b) That the court has entered a dispositional order pursuant to RCW 13.34.130;
(c) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;
(d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;
(e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. A parent's failure to substantially improve parental deficiencies within twelve months following entry of the dispositional order shall give rise to a rebuttable presumption that there is little likelihood that conditions will be remedied so that the child can be returned

Because of the parents' fundamental constitutional rights at stake in termination hearings, due process requires that parents have the ability to present all relevant evidence for the juvenile court to consider prior to terminating a parent's rights. *In re Welfare of Shantay C.J.*, 121 Wn. App. 926, 940, 91 P.3d 909 (2004).

Although *In re Dependency of A.C.*, 123 Wn. App. 244, 98 P.3d 89 (2004), was decided based on the dependency guardianship statutes that existed prior to the legislative change in 2010, its analysis of the relationship between guardianship and termination is helpful here. In *A.C.*, the juvenile court considered competing petitions for dependency guardianship (under former RCW 13.34.231 (2000)) and termination of parental rights. The juvenile court found that termination was in the children's best interests and the parents appealed. *A.C.*, 123 Wn. App. at 248. Division One of this court addressed whether the juvenile court erred by deciding that termination was in the children's best interests and, to that end, examined the effect of guardianship versus termination. *A.C.*, 123 Wn. App. at 250.

Under the prior statutes, "Washington courts are said to 'look at dependency guardianship as a less restrictive alternative to termination.'" *A.C.*, 123 Wn. App. at 252 (quoting 3 WASHINGTON FAMILY LAW DESKBOOK, cmt. § 59.7(1) (2d ed. 2000)). The primary consideration for the courts when deciding between dependency guardianship and termination is permanency for the child. *A.C.*, 123 Wn. App. at 251. The *A.C.* court noted that "[d]ependency

---

to the parent in the near future. The presumption shall not arise unless the petitioner makes a showing that all necessary services reasonably capable of correcting the parental deficiencies within the foreseeable future have been clearly offered or provided . . .;

. . . .

(f) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home.

6

guardianships now offer sufficient permanency to present a viable alternative to termination in appropriate cases." 123 Wn. App. at 251. And, in other cases, termination does not ensure permanency because "[t]here is no guaranty that adoption will follow termination." *A.C.*, 123 Wn. App. at 252.

In *A.C.*, members of the children's extended family petitioned for a dependency guardianship and DSHS petitioned for termination because the children were currently placed with a family which wanted to adopt them. The juvenile court found that because the children did not have established emotional ties with their extended family and had actual prospects for adoption, termination was in the children's best interests. *A.C.*, 123 Wn. App. at 255. The appellate court agreed, noting that in this case termination offered the children more permanency than guardianship. *A.C.*, 123 Wn. App. at 255-56. However, the *A.C.* court held that any case considering guardianship and termination must consider "case-specific factors relevant to the best interests of the child." 123 Wn. App. at 255.

Here, as below, the State argued that under our Supreme Court's recent ruling in *In re Dependency of K.D.S.*, 176 Wn.2d 644, 294 P.3d 695 (2013), the juvenile court does not consider the nature of a potential placement when determining whether the State has met its burden to prove RCW 13.34.180(1)(f). We disagree with the State's characterization of *K.D.S.* In *K.D.S.*, our Supreme Court expressly held that "[p]roof of the element codified in RCW 13.34.180(1)(e) does not necessarily prove the element codified in RCW 13.34.180(1)(f)." 176 Wn.2d at 656. The court also rejected the argument that a prospect for a permanent placement was necessary to prove RCW 13.34.180(1)(f) and noted,

> We have repeatedly stated that RCW 13.34.180(1)(f) focuses on "the parent-child relationship and whether it impedes the child's prospects for integration, not what

7

> constitutes a stable and permanent home. The State does not have to prove that a
> stable and permanent home is available at the time of termination."

*K.D.S.*, 176 Wn.2d at 658 (quoting *In re Dependency of K.S.C.*, 137 Wn.2d 918, 927, 976 P.2d

113 (1999)). Nothing in *K.D.S.* prohibits the juvenile court from considering the child's

prospects for permanency. Rather, *K.D.S.* reiterates that the State does not have the burden to

prove a permanent placement exists at the time of termination.

The State can prove RCW 13.34.180(1)(f) in one of two ways. The State can prove

prospects for a permanent home exist but the parent-child relationship prevents the child from

obtaining that placement. *See, e.g., A.C.*, 123 Wn. App. at 250 ("While a detrimental personal

relationship would not be irrelevant, [RCW 13.34.180(1)(f)] is mainly concerned with the

continued effect of the *legal* relationship between parent and child, as an obstacle to adoption it

is especially a concern where children have potential adoption resources."). Alternatively, the

State can prove the parent-child relationship has a damaging and destabilizing effect on the child

that would negatively impact the child's integration into any permanent and stable placement.

*See, e.g., K.D.S.*, 176 Wn.2d at 659 (continuation of the harmful parent-child relationship

"diminishes the likelihood K.D.S. will be emotionally and psychologically prepared to integrate

into a stable and permanent home should one become available."). The availability of a

guardianship placement is material to determining whether the State can prove either of these

means of satisfying RCW 13.34.180(1)(f).

Although evidence of the availability of a guardianship is material to whether the State

can meet its burden to prove RCW 13.34.180(1)(f), it is not necessary for the State to disprove

the availability of a guardianship placement. Just as the State is not required to prove that the

child has a prospect for adoption, the State is not required to prove that the child does not have a

prospective guardianship placement. *K.D.S.*, 176 Wn.2d at 657. But the availability of a guardianship is evidence that the trial court should consider when determining whether the State has met its burden to prove RCW 13.34.180(1)(f). Terminations should always be decided on a case specific basis. *A.C.*, 123 Wn. App. at 255. As *A.C.* demonstrates, there will be circumstances under which termination, rather than guardianship, is the appropriate course of action. 123 Wn. App. at 255-56. However, the juvenile court must consider all available material and relevant information to properly make this determination.

Here, the potential for a guardianship placement had been established for four months prior to the termination trial and the State had completed the necessary background check and was in the process of approving the aunt for guardianship placement. At the termination hearing, DSHS expressed optimism about being able to permanently place the children with the aunt. The juvenile court should have considered the availability of guardianship placement with the aunt when determining whether the State had met its burden to prove RCW 13.34.180(1)(f). Therefore, the juvenile court abused its discretion by denying Adolphus's timely motion to continue the trial and, as a result, prevented Adolphus from being able to present material evidence. Furthermore, Adolphus was prejudiced when the juvenile court denied his motion to continue until DSHS could determine whether a guardianship could be established because, without this information, the juvenile court could not properly decide whether the State had met its burden to prove that his continued relationship with his children diminished his children's prospects for early integration into a stable and permanent home as required under RCW 13.34.180(1)(f). Accordingly, the juvenile court improperly denied Adophus's motion to continue, and we reverse and remand for a new trial.

9

SANCTIONS

Under RAP 18.9(a), we may impose sanctions on counsel who violate court rules. RPC 3.3(a)(1) prohibits a lawyer from knowingly making "a false statement of fact or law to a tribunal." Here, Ms. McCabe misrepresented the record of Adolphus's termination trial when she repeatedly asserted in her reply brief and during oral argument that there was no evidence in the record that the children felt unsafe with their father. Wash. Court of Appeals oral argument, *In re the Welfare of R.H., R.A., T.A., T.H., N.R., and Z.R.*, Nos. 43580-2-II, 43590-0-II, 43594-2-II, 43684-1-II, 43690-6-II, 43694-9-II (June 28, 2013), at 4 min., 46 sec.-5 min., 36 sec.; 26 min., 15 sec.-26 min., 30 sec. (on file with court). Our review of the record reveals that T.A.'s attorney, in his capacity as an officer of the court representing T.A.'s interests, informed the court that T.A. did not want to see either of his parents. Furthermore, the children's case worker, Stephanie Rodrigues, testified that T.A. felt unsafe when his father was drinking. She also testified that R.A. did not want to be placed with his aunt because he was afraid his parents "will come and get him." 2 Report of Proceedings at 248. In this context, T.A.'s attorney's statements and Rodrigues's testimony are evidence in the record that the children felt unsafe with their father. When confronted with this evidence during oral argument, Ms. McCabe maintained that the statements were simply the attorneys' arguments and, as such, are not evidence. We determined that these statements were not argument of attorneys representing DSHS or Adolphus and, during rebuttal oral argument, again questioned Ms. McCabe's assertion that there was no such evidence in the record. Even if we charitably assume that counsel's misrepresentations were the result of carelessness, her insistence on the accuracy of her assertion is inexcusable. Such repeated and blatant oral misrepresentations of the content of the record does a disservice to her client and this court. In this case, we impose monetary sanctions and expect that this

10

admonition will be sufficient to serve notice that this court will not tolerate such unprofessional behavior.

We reverse the juvenile court's order terminating Adolphus's parental rights and remand for further proceedings consistent with this opinion. By separate order we also impose monetary sanctions against Adolphus's counsel, Jordan B. McCabe, payable to the registry of this court.

_____
QUINN-BRINTNALL, J.

We concur:

_____
JOHANSON, A.C.J.

_____
FORBES, J.P.T.

11