[Nos. 47903-6-II; 47918-4-II. Division Two. December 28, 2016.]

*In the Matter of the Parental Rights to* J.B., Jr.

*In the Matter of the Guardianship of* J.B., Jr.

*Lise Ellner*, for appellant.

*Robert W. Ferguson*, *Attorney General*, and *Peter E. Kay*, *Assistant*, for respondent.

¶1 BJORGEN, C.J. — Appellant, JB Sr., appeals the juvenile court's orders terminating the parental rights of JB Sr. and KB as to JB Jr. and denying the parents' petition to establish a guardianship for JB Jr. with his grandparents AB and SB as guardians.

¶2 JB Sr. argues that (1) the juvenile court erroneously considered the child's best interest under RCW 13.34-.190(1)(b) before making the prerequisite determination on parental unfitness under RCW 13.34.180; (2) substantial evidence does not support the juvenile court's findings of fact related to RCW 13.34.180(1)(f); (3) substantial evidence does not support the juvenile court's findings that termination is in the child's best interest; (4) the juvenile court erred by not making a specific finding that a guardianship generally was not in the child's best interest; (5) the juvenile court erred by not considering JB Jr.'s Indian heritage; (6) the juvenile court violated the separation of powers doctrine by accessing the Judicial Information System; and (7) the juvenile court violated the appearance of fairness doctrine.

■ ¶3 In the published portion of this opinion, we hold that in a hybrid termination and guardianship proceeding, where the only contested issues are whether "continuation

of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home," RCW 13.34.180(1)(f), and whether a guardianship or termination is in the child's best interest, the juvenile court does not err by considering the proposed guardianship placement or the child's potential adoptive home in determining whether termination factor (f), regarding "early integration," has been established. Even though these considerations implicitly touch on the child's best interest, examination of that evidence is proper at this stage.

¶4 In the unpublished portion of this opinion, we hold that the juvenile court did not err in its findings of fact and conclusions of law and that it did not violate the separation of powers or appearance of fairness doctrines. We decline to consider whether the juvenile court erred in failing to consider JB Jr.'s Indian heritage generally, because this issue was not sufficiently raised to the trial court. RAP 2.5(a).

¶5 Accordingly, we affirm.

## FACTS

¶6 On November 12, 2012, JB Jr. was born to JB Sr., his father, and KB, his mother. On September 25, 2013, the Department of Social and Health Services (DSHS) filed a petition for the dependency of JB Jr. after KB was arrested for shoplifting and the parents were found to be using methamphetamine and heroin. On November 13, the juvenile court entered an order of dependency, removed JB Jr. from the parents' home, and placed him with KB's relative. In June 2014, KB's relative could no longer take care of JB Jr., and he was placed in foster care, where he remains.

¶7 DSHS subsequently filed for termination of parental rights, alleging that all required services had been offered to the parents, that the parents made little or no attempt to correct their parental deficiencies through the services, and

that the parents made little or no attempt to visit their child regularly, among other matters. In response, the parents petitioned the court to establish a guardianship for JB Jr. with the grandparents AB and SB as guardians. DSHS opposed the guardianship. The guardianship and termination matters were consolidated for trial.[1]

¶8 Upon the conclusion of trial, the juvenile court simultaneously entered a termination order and a guardianship order with findings of fact and conclusions of law. The orders first established that the parents stipulated to five of the required elements to either establish termination or a guardianship. *Compare* RCW 13.34.180(1)(a)-(e), *with* RCW 13.36.040(2)(c)(i)-(v). In its termination order, the juvenile court determined that the termination element of RCW 13.34.180(1)(f)—that continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home— was met. It further found that the termination, not the proposed guardianship, was in JB Jr.'s best interest. In pertinent part, the termination order reads:

[Finding of Fact] IV

There is little likelihood that conditions will be remedied so that the above-named child can be returned to the parents in the near future. [KB] is currently unfit to parent the child. . . . She has acknowledged that she is not able to care for her child due to her own issues and wants the child to be placed in a guardianship.

[JB Sr.] is currently unfit to parent the child. . . . He has acknowledged that he is not able to care for his child due to his own issues and wants the child to be placed in a guardianship.

. . . .

[Finding of Fact] VII

Continuance of the parent-child relationship clearly diminishes the child's prospects for early integration into a stable

---

[1] In the unpublished portion of our opinion, we analyze the evidence and proceedings of this trial in greater detail.

and permanent home. The Department can prove this element in one of two ways. *In re Welfare of R.H.*, 176 Wn. App. 419, 428, 309 P.3d 620 (2013). First, the Department can prove that prospects for a permanent home exist but the parent-child relationship prevents the child from obtaining that placement. Second, the Department can prove the parent-child relationship has a damaging and destabilizing effect on the child that would negatively impact the child's integration into any permanent and stable placement. A guardianship is material under *R.H.* as to whether the Department has established this element. The parents have filed a guardianship petition . . . naming [AB] and [SB] as proposed guardians, and the court has reviewed RCW 13.36 and the case law on this statute.

. . . .

Children already being in the [grandparents'] home is not the standard. Removing children from a home versus establishing a guardianship is not the same thing. No parent or custodian is perfect, but the home must be safe and stable for children. The court does find that the [parents and grandparents] are family and that they love [JB Jr.]. Family is important. But, the court is not convinced that the[y] have the skills necessary to care for the child or that they have a home that is appropriate for the child.

. . . .

The child, [JB Jr.,] is a toddler and has been in foster care placements with maternal relatives and then his current placement the majority of his life. He has been in his current placement for a year, and it is safe, stable and appropriate. This placement is meeting his needs and is a potential adoptive home. The Department has proven that prospects for a permanent home exist but that the parent-child relationship prevents the child from obtaining that placement. The only option for a permanent, safe and stable home for the child is by an adoption. That home will not be able to adopt [JB Jr.] if the parents retain their parental rights.

[Finding of Fact] VIII

An order terminating all parental rights is in the best interests of the minor child. [JB Jr.] needs a permanent and stable home and his current placement is safe, stable and

appropriate. [KB] and [JB Sr.] have not been able to care for this child and indicated that they wanted [AB and SB] to care for the child. The needs of the child are being met by the current home for the child, and not by the parents.

. . . .

[Conclusion of Law] II

That it would be in the best interest of the minor child, including the child's health and safety, that the parent-child relationship between the above-named child and [KB], mother, and [JB Sr.], father, be terminated and that the child be placed in the custody of [DSHS] for placement as best suits the needs of the child.

. . . .

[Conclusion of Law] IV

That an order terminating the parent and child relationship between [KB], mother, [JB Sr.], father and [JB Jr.], child, is in the best interests of the child. An order establishing a guardianship under RCW 13.36 is not in the best interests of the child.

Clerk's Papers (CP) at 97-99. The juvenile court's guardianship order substantially mirrored the above findings and conclusions.

¶9 JB Sr. appeals.

## ANALYSIS

¶10 JB Sr. argues that the juvenile court erroneously considered the child's best interest under RCW 13.34-.190(1)(b) before making the prerequisite determination on parental unfitness under RCW 13.34.180. We disagree.

¶11 Under RCW 13.34.180(1), a party seeking termination of a parent-child relationship must establish the following:

(a) That the child has been found to be a dependent child;

(b) That the court has entered a dispositional order pursuant to RCW 13.34.130;

(c) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;

(d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;

(e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future.

. . . .

(f) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home.

In addition, a court must also find that termination "is in the best interests of the child." RCW 13.34.190(1)(b).

¶12 In support of his argument, JB Sr. cites *In re Welfare of A.B.*, 168 Wn.2d 908, 911, 232 P.3d 1104 (2010), where the court described the two-step process a juvenile court must take before terminating parental rights:

By virtue of RCW 13.34.180(1) and RCW 13.34.190, a Washington court uses a two-step process when deciding whether to terminate the right of a parent to relate to his or her natural child. The first step focuses on the adequacy of the parents and must be proved by clear, cogent, and convincing evidence. The second step focuses on the child's best interests and need be proved by only a preponderance of the evidence. Only if the first step is satisfied may the court reach the second.

(Footnotes omitted.) In *A.B.*, the father argued that the juvenile court violated this two-step process by examining AB's best interests at the same time it was determining whether the father was unfit. The *A.B.* court agreed because the juvenile court's findings demonstrated that it concurrently considered the child's best interest and parental unfitness, stating:

> In the course of deciding whether to terminate Salas' parental rights, the trial court in this case reasoned in part that A.B. had been living with T.L. all of her life; that A.B. was fully integrated into T.L.'s home and had not developed a significant relationship with Salas; and "that it is in [A.B.'s] best interest to maintain a relationship with her father and his family provided that the continuation of that relationship does not constitute a perpetual challenge to the legitimacy of the placement with [T.L.]." In making these and other similar statements, the trial court was obviously focusing on A.B.'s best interests, as opposed to Salas' current unfitness. Accordingly, we are required to hold that the trial court reasoned erroneously.

*Id.* at 926 (alterations in original) (footnotes omitted).

¶13 Unlike *A.B.*, the procedural posture in the present case involved the juvenile court making simultaneous determinations about whether termination or a guardianship was more appropriate for JB Jr. In addition, the parents stipulated to five of the required elements to establish either a termination or guardianship. *Compare* RCW 13.34-.180(1)(a)-(e), *with* RCW 13.36.040(2)(c)(i)-(v). The only remaining elements for the juvenile court to determine were whether termination element (f) was met, RCW 13.34-.180(1)(f), and whether termination or a guardianship was in the best interest of JB Jr. RCW 13.34.190(1)(b); RCW 13.36.040(2)(a).

¶14 Termination element (f) implicitly touches on the best interest of the child standard. To establish element (f), DSHS must show "[t]hat continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home." RCW 13.34.180(1)(f). It can prove this in two ways. First,

> [t]he State can prove prospects for a permanent home exist but the parent-child relationship prevents the child from obtaining that placement. Alternatively, the State can prove the parent-child relationship has a damaging and destabilizing effect on the child that would negatively impact the child's integration into any permanent and stable placement.

*R.H.*, 176 Wn. App. at 428 (citation omitted). Both ways of proving element (f) contemplate the availability of a permanent and stable home for the child. To that extent, termination element (f) measures parental unfitness by examining whether the parental relationship impedes the child's welfare by diminishing its chances of entering into an enduring home. This directly involves consideration of the child's best interests.

¶15 Further, if a party petitions the juvenile court to place a child with guardians, the court should weigh the potential guardianship in calculating whether termination element (f) has been established. As we noted in *R.H.*, 176 Wn. App. at 428-29,

> The availability of a guardianship placement is material to determining whether the State can prove either of these means of satisfying RCW 13.34.180(1)(f).
>
> . . . [T]he availability of a guardianship is evidence that the trial court should consider when determining whether the State has met its burden to prove RCW 13.34.180(1)(f).

A juvenile court can only order a guardianship if it is in the child's best interests. RCW 13.36.040(2)(a). In making this determination, the juvenile court considers

> *the strength and nature of the parent and child bond,* the benefit of continued contact with the parent or the extended family, the need for continued State involvement and services, *and the likelihood that the child may be adopted if parental rights are terminated.*

*In re Welfare of A.W.*, 182 Wn.2d 689, 711-12, 344 P.3d 1186 (2015) (emphasis added).

¶16 Thus, when the juvenile court considers whether termination element (f) has been established, *R.H.* allows it to consider the proposed potential guardianship. *R.H.*, 176 Wn. App. at 428-29. In turn, that guardianship can only be established by determining whether it is in the child's best interest, which requires consideration of the parent-child bond and the potential adoptive home. *Id.*; *A.W.*, 182 Wn.2d

at 711-12. Coming full circle, when a juvenile court determines whether element (f) is established, it necessarily considers to some degree what is in the child's best interest. *Cf. In re Dependency of K.D.S.*, 176 Wn.2d 644, 656, 294 P.3d 695 (2013).

¶17 Under these principles, when the juvenile court in the present case was determining whether termination element (f) was met, it was permitted to consider the prospects of JB Jr.'s current foster home placement and the grandparents' suitability as guardians. In addition, the implicit consideration of the best interests of JB Jr. in the juvenile court's determination whether DSHS established termination element (f) does not run afoul of the two-step process outlined in *A.B.* In *A.B.*, 168 Wn.2d at 926-27, the juvenile court's findings explicitly considered the child's best interest when determining parental unfitness under RCW 13.34.180. In contrast to *A.B.*, the juvenile court here recognized that the parents were unfit first. In finding four, it noted that both parents are "unfit" and "not able to care for [their] child," but they wanted JB Jr. to be placed with the grandparents as guardians. CP at 97. In finding seven, the juvenile court ruled that termination element (f) had been met because the grandparents were unsuitable as guardians and that the parents would interfere with the prospect of the stable adoptive home—both proper considerations under *R.H.* With the hybrid nature of this termination and guardianship proceeding, we cannot say that the court's findings erroneously focused on JB Jr.'s interest, given the inherent overlap between termination element (f) and what will be in the child's best interest. Accordingly, JB Sr.'s claim fails, and we affirm the juvenile court.

¶18 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

JOHANSON and MAXA, JJ., concur.