IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

In the Matter of the Dependency of )
                                    )     No. 78916-3-I

M.H., )
DOB: 11/4/16, )     DIVISION ONE
                                    )
           Minor Child. )     UNPUBLISHED OPINION
                                    )
STATE OF WASHINGTON, )
DEPARTMENT OF CHILDREN, )
YOUTH AND FAMILIES, )
                                    )
           Respondent, )
                                    )
    v. )
                                    )
DMITRIY TIMPANIDI, )
                                    )     FILED: June 17, 2019
           Appellant. )
_____ )

LEACH, J. — Dmitriy Timpanidi appeals the termination of his parental rights to his daughter M.H. Timpanidi challenges the validity of the underlying default dependency order and also contends that the State did not prove continuation of the parent-child relationship was a barrier to permanency for M.H. We disagree and affirm.

FACTS

At birth on November 4, 2016, M.H. tested positive for methamphetamine and morphine. M.H.'s biological mother left the hospital shortly after the birth and did not

return.[1]  She identified Jimmy Pinedi as M.H.'s father.  In November 2016, the Department of Social and Health Services, now known as the Department of Children, Youth and Families (Department), filed a dependency petition as to M.H.  The Department placed M.H. with her maternal second cousin and his spouse the following day, where M.H. has remained.

The Department had no contact information for Pinedi.  So social worker Dan Althoff initiated a "diligence search."  During this process, Althoff discovered that the Division of Child Support had identified Timpanidi as an alleged father of M.H.  In March 2017, Althoff filed a first amended dependency petition naming Timpanidi as an alleged father of M.H.  Althoff found a last known address for Timpanidi and left his card at the door.  Althoff later received a call from Timpanidi's mother.  After she informed Althoff that she did not know where her son was, Althoff asked the court to allow service by publication.

In June 2017, Althoff discovered that Timpanidi was being held in Snohomish County Jail on theft and drug possession charges.  Althoff contacted the Snohomish County Prosecutor's Office to arrange for paternity testing and to serve Timpanidi with a "service packet" that included the notice and summons, the initial dependency petition, and the amended dependency petition.  The notice and summons stated an initial court date of July 11, 2017.  It also advised Timpanidi to contact the Snohomish County Office of Public Defense to request an attorney.  In the return of service, the process

---

[1] Her parental rights were terminated by default in May 2018, and she is not a party to this appeal.

server stated that Timpanidi was personally served with the dependency petition and notice and summons on June 13, 2017.

Timpanidi did not obtain an attorney or appear at the July 11, 2017, hearing. The court entered a default order of dependency that same day.[2] The order required Timpanidi to establish paternity and participate in services, including drug and alcohol evaluation, urinalysis testing, mental health assessment, and parenting instruction. Throughout the dependency, Althoff contacted the correctional facilities where Timpanidi was being held to determine whether services were available, but none had programs to assist incarcerated parents.

Timpanidi submitted to paternity testing. In September 2017, the test results proved Timpanidi was M.H.'s father

On December 19, 2017, the Department filed a petition to terminate Timpanidi's parental rights to M.H. The State had Timpanidi personally served at the Coyote Ridge Correctional Facility on January 3, 2018. He later obtained counsel through the Office of Public Defense. Timpanidi appeared through counsel in the termination proceeding in late January 2018 and filed an answer to the termination petition in March 2018.

The termination trial took place in June 2018. After the Department rested its case, Timpanidi's counsel asked the court to dismiss the case because the Department had failed to establish the first three elements of the termination statute as a matter of law because the default dependency petition was void. The trial court denied

---

[2] There is no evidence in the record that Timpanidi appealed or moved to vacate the default dependency order.

Timpanidi's request and terminated his parental rights to M.H. The court's termination order includes the following contested findings:

2.1 The [father] received adequate service.

. . . .

2.9 Mr. Timpanidi was properly personally served with the amended dependency petition on June 13, 2017.

2.10 The social worker testified that the prosecutor's office served Mr. Timpanidi the original petition, the amended petition, and the paperwork with the preliminary hearing date and contact information for the Office of Public Defense.

2.11 The child was found to be dependent pursuant to RCW 13.34.030(6)(a) and (c) by Order filed on June 6, 2017 as to the mother, August 29, 2017 as to the unknown and alleged father, and July 11, 2017 as to alleged father, Dmitriy Timpanidi.

. . . .

2.23 It is obvious that Mr. Timpanidi did know how to access counsel through the Office of Public Defense because, in fact, he did it in January of 2018 when Mr. Stebbins ended up being his attorney, while being held at the Northwest Detention Center.

2.24 The fact that Mr. Timpanidi eventually requested an attorney seven months after he was served with the paperwork shows that he knew how to get a lawyer. In fact, he eventually did.

2.25 The father's cooperation with the paternity testing with the prosecutor's office did not constitute appearance in the dependency case.

2.26 Mr. Timpanidi was required to request an attorney if he wished to have an attorney.

2.27 At the time he was served, Mr. Timpanidi was merely an alleged father. DNA testing did not come back until September of 2017, after the July default. There was a delay in establishing paternity due to the mother's whereabouts being unknown.

2.28 Mr. Timpanidi was not a parent under the dependency statute until after the paternity testing revealed he was the father.

2.29 Coughlin v. Jenkins [State ex rel. Coughlin v. Jenkins, 102 Wn. App. 60, 7 P.3d 818 (2000)] is not applicable to this case for the purpose of establishing the father appeared via paternity testing. Furthermore, according to the case of Morin v. Burris, 160 Washington 2nd 749, a 2007 case, "The defendant must go beyond merely acknowledging that a dispute exists and instead acknowledge that a dispute exists in court." That did not happen here.

2.30 Mr. Timpanidi never appealed the order of dependency. He never filed a CR 60 motion. The argument that Mr. Timpanidi appeared when the underlying dependency order was entered is nothing more than a collateral attack upon the July 11, 2017 dependency finding, which was final and appealable.

2.31 Under RAP 2.2(a)(5), "a party may appeal as a matter of right from the disposition decision following a finding of dependency by a juvenile court." A final judgment includes any order, such as this one, "from which an appeal lies." Under the Rules of Appellate Procedure 5.2, that needed to be done within 30 days after the judgment was entered. Mr. Timpanidi did not appeal that order.

2.32 The underlying dependency order entered on July 11, 2017 was valid.

2.33 Dispositional orders pursuant to RCW 13.34.130 were entered on June 6, 2017 as to the mother and July 11, 2017 as to the father. Mr. Timpanidi was ordered to complete a drug and alcohol evaluation, mental health assessment, urine analysis testing and parenting classes. He was also ordered to establish paternity.

. . . .

2.54 Mr. Timpanidi is currently unfit to parent.

. . . .

2.67 Mr. Timpanidi does not understand and is incapable of providing for the child's emotional, physical, mental, and developmental needs. The father is incapable of safely parenting the child.

2.68 Mr. Timpanidi has not demonstrated the ability to care for his child.

. . . .

2.73    Mr. Timpanidi has no demonstrated parenting skills.

. . . .

2.75    Mr. Timpanidi has no work history.

. . . .

2.77    Mr. Timpanidi has a very lengthy criminal history and obvious drug problems.

. . . .

2.80    Continuation of the parent-child relationship clearly diminishes the child's prospect for early integration into a stable and permanent home.

Timpanidi appeals.

## STANDARD OF REVIEW

The United States Constitution protects parental rights as a fundamental liberty interest.[3] To terminate parental rights, the State must first prove the following statutory elements by clear, cogent, and convincing evidence:

(a)    That the child has been found to be a dependent child;

(b)    That the court has entered a dispositional order pursuant to RCW 13.34.130;

(c)    That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;

(d)    That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;

---

[3] Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982).

(e)    That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future . . . and

(f)    That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home.[4]

If the trial court finds that the Department has met its burden under RCW 13.34.180, it may terminate parental rights if it also finds by a preponderance of the evidence that termination is in the "best interests" of the child.[5] "The dominant consideration is the moral, intellectual, and material welfare of the child."[6] Where a child's rights conflict with the parent's legal rights, the child's rights prevail.[7]

We will not disturb the trial court's findings if substantial evidence supports them.[8] "'Substantial evidence' is evidence in sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise."[9] We do not judge the credibility of the witnesses or weigh the evidence.[10] An appellate court accepts as true on appeal unchallenged findings of fact.[11] Whether a termination order satisfies statutory requirements presents a question of law that an appellate court reviews de novo.[12]

---

[4] RCW 13.34.190(1)(a)(i); RCW 13.34.180(1).

[5] RCW 13.34.190(1).

[6] In re Dependency of T.R., 108 Wn. App. 149, 161, 29 P.3d 1275 (2001).

[7] RCW 13.34.020.

[8] In re Dependency of J.A.F., 168 Wn. App. 653, 667, 278 P.3d 673 (2012).

[9] In re Welfare of T.B., 150 Wn. App. 599, 607, 209 P.3d 497 (2009).

[10] In re Welfare of M.R.H., 145 Wn. App. 10, 24, 188 P.3d 510 (2008).

[11] In re Dependency of M.-A.F.-S., 4 Wn. App. 2d 425, 455, 421 P.3d 482, review denied, 191 Wn.2d 1024 (2018).

[12] In re Dependency of K.N.J., 171 Wn.2d 568, 574, 257 P.3d 522 (2011).

ANALYSIS

Default Dependency Order

Timpanidi claims that the Department did not prove the first three elements of RCW 13.34.180(1). Specifically, he contends that the default dependency order was void because the court entered it in violation of his rights to notice and to counsel. We disagree.

Timpanidi first argues that the dependency order is void because the State did not properly serve him. "Where a court lacks jurisdiction over the parties or the subject matter, or lacks the inherent power to make or enter the particular order, its judgment is void."[13] Proper service of a summons and complaint is necessary to invoke the personal jurisdiction of the court.[14] A court presumes that an affidavit of service regular in form and substance is correct.[15] The party denying proper service of process has the burden of showing by clear and convincing evidence that proper service did not occur.[16]

Here, the service affidavit indicates via checked boxes that Timpanidi was personally served at the Snohomish County Jail with the following documents: "Dependency Petition" and "Notice and Summons/Order, a copy of which is attached." From this description, Timpanidi contends this court must presume the State served him with only the initial dependency petition that named a different alleged father, not the amended dependency petition naming him as an alleged father of M.H. But Althoff

---

[13] In re Marriage of Mu Chai, 122 Wn. App. 247, 254, 93 P.3d 936 (2004).
[14] Morris v. Palouse River & Coulee City R.R., 149 Wn. App. 366, 370-71, 203 P.3d 1069 (2009).
[15] Leen v. Demopolis, 62 Wn. App. 473, 478, 815 P.2d 269 (1991).
[16] Scanlan v. Townsend, 181 Wn.2d 838, 847, 336 P.3d 1155 (2014).

testified that the service packet he prepared contained the first dependency petition, the amended dependency petition naming Timpanidi as the alleged father, and the notice and summons. Timpanidi claims that the trial court could not rely on this testimony to find proper service because Althoff admitted that he was not physically present at the time and place of service. We will not disturb the trial court's credibility determination. Substantial evidence supports the trial court's finding that the State had Timpanidi properly personally served with the dependency petition. The court had personal jurisdiction over Timpanidi when it entered the default order of dependency.[17]

Timpanidi next argues that the trial court violated his statutory right to counsel at the dependency proceeding when it entered the default order. He contends that a statute required the court appoint counsel first because he "appeared" in the dependency proceeding by agreeing to submit to paternity testing. We disagree. RCW 13.34.090(2) provides,

> At all stages of a proceeding in which a child is alleged to be dependent, the child's parent, guardian, or legal custodian has the right to be represented by counsel, and if indigent, to have counsel appointed for him or her by the court. Unless waived in court, counsel shall be provided to the child's parent, guardian, or legal custodian, if such person (a) has appeared in the proceeding or requested the court to appoint counsel and (b) is financially unable to obtain counsel because of indigency.

---

[17] Timpanidi, citing In re Dependency of K.N.J., 171 Wn.2d 568, 257 P.3d 522 (2011), asserts that the void dependency order was insufficient to establish that M.H. was dependent. In K.N.J., the dependency order was signed by a judge pro tempore without the consent of all parties. Because consent is the basis for a judge pro tempore's power to act, lack of consent deprived the court of jurisdiction and rendered the dependency order void. K.N.J., 171 Wn.2d at 578. Here, in contrast, service was not constitutionally inadequate, and the court did not lack jurisdiction. Moreover, we note that Timpanidi failed to appeal the order of dependency or to file a CR 60 motion for relief from judgment or order.

Under RCW 4.28.210, "[a] defendant appears in an action when he or she answers, demurs, makes any application for an order therein, or gives the plaintiff written notice of his or her appearance." "Even informal acts, such as written or oral statements to the plaintiff in the action can constitute an appearance."[18] But "mere intent to defend . . . is not enough; the defendant must go beyond merely acknowledging that a dispute exists and instead acknowledge that a dispute exists in court."[19]

Timpanidi, relying on Coughlin, argues that he impliedly consented to the court's jurisdiction and thus appeared by submitting to paternity testing. In Coughlin, the alleged father responded to a summons and petition to establish parentage by sending a letter to the State denying any acquaintance with the child's mother.[20] After being found in default for failing to submit to a court-ordered blood test, he again responded by letter admitting that he had ignored the previous notices and asking for an opportunity to comply. The blood test established paternity, and the court granted summary judgment as to parentage. The superior court found that the father's letters to the State constituted an appearance before entry of final judgment and that he thereby waived all defenses as to jurisdiction.[21] The appellate court agreed and held that the father "appeared" in the case by voluntarily corresponding with the prosecutor's office and submitting to the blood test.[22]

---

[18] State ex rel. Coughlin v. Jenkins, 102 Wn. App. 60, 63, 7 P.3d 818 (2000).
[19] Morin v. Burris, 160 Wn.2d 745, 756, 161 P.3d 956 (2007).
[20] Coughlin, 102 Wn. App. at 62.
[21] Coughlin, 102 Wn. App. at 62.
[22] Coughlin, 102 Wn. App. at 63-64.

Here, in contrast, the record contains no evidence that Timpanidi did anything besides submitting to a paternity test. Timpanidi does not dispute that he did not respond to the dependency petition or attempt to request an attorney. He does not dispute that the notice and summons advised him that if he wished to have a lawyer appointed, he needed to contact the Office of Public Defense at the provided phone number. Yet Timpanidi did nothing to exercise his right to counsel until after the Department served the termination petition. Under these circumstances, the mere act of submitting to a paternity test cannot be construed as an intent to appear and defend against the dependency petition.

Timpanidi next argues the Department failed to serve him with a notice of default five days before the dependency hearing. CR 55(a)(3) provides that "[a]ny party who has appeared in the action for any purpose shall be served with a written notice of motion for default and the supporting affidavit at least 5 days before the hearing on the motion." However, "[a] party who has not appeared prior to filing of a motion for default is not entitled to notice of the motion."[23] Because Timpanidi did not appear in the action, he was not entitled to notice of the motion for default.

### Stable and Permanent Home

Timpanidi argues the Department failed to prove that "continuation of the parent-child relationship clearly diminishes M.H.'s prospects for early integration into a stable and permanent home" as required by RCW 13.34.180(f). Because maintaining this legal relationship prevents M.H. from establishing a permanent home, we disagree.

---

[23] Gage v. Boeing Co., 55 Wn. App. 157, 160, 776 P.2d 991 (1989).

The Department may establish this factor in one of two ways:

> The State can prove prospects for a permanent home exist but the parent-child relationship prevents the child from obtaining that placement. Alternatively, the State can prove the parent-child relationship has a damaging and destabilizing effect on the child that would negatively impact the child's integration into any permanent and stable placement.[24]

"[T]his factor is mainly concerned with the continued effect of the <u>legal</u> relationship between parent and child, as an obstacle to adoption; it is especially a concern where children have potential adoption resources."[25]

Timpanidi contends that maintaining the legal parent-child relationship has no impact on this factor because M.H. lives in a stable placement with caregivers who are willing to continue to care for her regardless of whether his parental rights are terminated. He further contends that the record contains no evidence his legal relationship with M.H. has a damaging or destabilizing effect on her. But placement in a foster home is by definition temporary, even when it is stable.[26] Here, Timpanidi did not challenge the trial court's finding that "[t]he caregivers are a prospective adoptive home." This finding is sufficient to establish that but for the legal relationship between Timpanidi and M.H., there is a high probability that she will find a permanent adoptive home.[27] The record here thus supports the trial court's finding that continuation of the parent-child relationship clearly diminishes M.H.'s prospect for integration into a stable and permanent home.

---

[24] In re Welfare of R.H., 176 Wn. App. 419, 428, 309 P.3d 620 (2013) (citations omitted).

[25] In re Dependency of A.C., 123 Wn. App. 244, 250, 98 P.3d 89 (2004).

[26] In re Dependency of A.D., 193 Wn. App. 445, 458, 376 P.3d 1140 (2016).

[27] A.D., 193 Wn. App. at 458.

Affirmed.

_____ Leach, J.

WE CONCUR:

_____

_____