FILED
COURT OF APPEALS
DIVISION II

2013 AUG 13 AM 10: 28

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| IN RE GUARDIANSHIP OF K.B.F. | No. 43922-1-II |
| | ORDER GRANTING MOTION FOR RECONSIDERATION AND MODIFICATION |

The Department of Social and Health Services (Department) has filed a "MOTION FOR RECONSIDERATION" of our published opinion, filed on June 11, 2013, asking us to modify the opinion in two respects. Appellant KF agrees with the Department's request to change the term "conversion" to "establish" in those places where the opinion addresses creation of a guardianship under RCW 13.36.040(2); he takes no position with respect to the Department's request to add an express reference to the additional Indian Child Welfare Act guardianship notice and evidentiary requirements in RCW 13.36.030(4).

We grant the Department's motion and make the following changes:

(1) On page 1, we delete the words "conversion of KBF's dependency" from the first sentence of the first full paragraph and replace them with the words "establishment of" so that this sentence now reads:

> KBF's father appeals the juvenile court's establishment of a guardianship under RCW 13.36.040.

No. 43922-1-II

Also on page 1, in line 8, we delete the words "converting KBF's dependency into" and replace them with the word "establishing" so that this clause now reads:

. . . a legislatively-mandated prerequisite for establishing a guardianship under RCW 13.36.040; . . . .

(2) On page 4, we delete the words "CONVERSION OF DEPENDENCY TO" from the heading for section II. so that this heading now reads:

II. GUARDIANSHIP

(3) On page 6, we delete the words "CONVERSION OF DEPENDENCY TO" from the heading for section I. and replace it with the words "ESTABLISHMENT OF" so that this heading now reads:

I. ESTABLISHMENT OF GUARDIANSHIP UNDER RCW 13.36.040

And in the second sentence after this heading, we delete the words "convert a dependency into" and replace them with the word "establish" so that this sentence now reads:

This 2010 statute requires the juvenile court to establish a guardianship when it . . . .

(4) On page 7, in the last sentence before heading II. "Necessary Services," add the words "subsection (4) of which requires the juvenile court to enter specific Indian child welfare act findings" so that this sentence now reads:

*See also* RCW 13.36.030, subsection (4) of which requires the juvenile court to enter Indian child welfare act findings.

(5) On page 9, in the second line from the top of the text, we delete the words "convert KBF's dependency into" and replace them with the word "establish" so that this sentence now reads:

We hold, therefore, that the juvenile court lacked authority to establish a guardianship under RCW 13.36.040.

2

No. 43922-1-II

And in the third line from the bottom of the text, we delete the words "convert KBF's dependency into" and replace them with the words "pursue" and "for KBF" so that this clause now reads:

> The record before us on appeal, however, shows that after deciding to pursue a guardianship for KBF, . . . .

**IT IS SO ORDERED.**

DATED this ___13TH___ day of ___AUGUST___, 2013.

_____
Hunt, J.

We concur:

_____
Worswick, C.J.

_____
Van Deren, J.P.T.

3

FILED
COURT OF APPEALS
DIVISION II

2013 JUN 11 AM 10: 39

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

IN RE GUARDIANSHIP OF K.B.F.

No. 43922-1-II

PUBLISHED OPINION

HUNT, J. — KBF's[1] father appeals the juvenile court's conversion of KBF's dependency to a guardianship under RCW 13.36.040. He argues the Department of Social and Health Services failed to prove that (1) it had offered him reasonably available court-ordered necessary services capable of correcting his parenting deficiencies in the foreseeable future; and (2) there is little likelihood that conditions will be remedied so that KBF can be returned to him in the near future. RCW 13.36.040(2)(c)(iv) and (v). We hold that the Department failed to identify the court-ordered services it had offered KBF's father, a legislatively-mandated prerequisite for converting KBF's dependency into a guardianship under RCW 13.36.040; and the State also failed to show that it had continued to order services until "a permanency planning goal [was] achieved or dependency [was] dismissed" as RCW 13.34.136(1)[2] required. Therefore, we vacate the juvenile court's guardianship order and remand for further proceedings.

---

[1] To provide some confidentiality, we order that initials be used in the case caption and in the body of the opinion to identify the parties and other juveniles involved.

[2] The legislature recently amended RCW 13.34.136, LAWS OF 2013, ch. 173, § 2, ch. 254, § 2, ch. 316, § 2 (effective July 28, 2013); none of these amendments are relevant to our analysis.

FACTS

In late 2009, Washington State Department of Social and Health Services social worker Tara Benson received a referral involving allegations that KBF's father was using drugs and that both KBF's father and mother were depressed; Benson visited the family home, saw tobacco on the floor and knives and lighters accessible to 15-month-old KBF, and asked the parents to complete drug testing (UAs) and to clean up the home. Benson found the home "much improved" when she visited the next week. Verbatim Report of Proceedings (VRP) at 8. But later that week, after both parents' UAs had tested positive for methamphetamine use, Benson returned to the home to find its condition had deteriorated; and she removed KBF. A week later, the family met with Benson to establish a family reunification plan; KBF went to stay with her maternal grandparents. Based on KBF's enrollment as a Siletz Indian child, the Department contacted the Siletz Tribe in Oregon.

## I. DEPENDENCY

The Department filed a dependency petition for KBF,[3] which the juvenile court granted. KBF remained with her maternal grandparents. In January 2010, Indian child welfare specialist Pat Lynn took over as the family's social worker. Lynn's first concern was KBF's parents' mental health and whether they were capable of supervising KBF. KBF's parents were offered

---

[3] This dependency petition was based on "concerns about the condition of the home, the parental substance use, and the parents' inability to get along with the [maternal grandparents] who had [KBF]"; her father's "significant criminal history"; "concerns about mental health issues" of both parents; her father's 2009 diagnosis of a depressive disorder, agoraphobia, and "borderline intellectual functioning"; his February and April 2009 referral for mental health services in which he "was not participating"; and KBF's developmental delays both mentally and physically. VRP at 10, 11.

"chemical dependency, mental health evaluation and services[, and] were going to set up parenting classes." VRP at 22.

After KBF's parents lost their home in February 2010, however, they were not in contact with the Department from August to December 2010. In the middle of 2012, they began living in the warehouse of an embroidery shop where KBF's father worked as an unpaid apprentice, receiving room and board in exchange for job training. While living in Portland, both of KBF's parents completed the following services offered through their tribe: mental health evaluations, positive Indian parenting courses, and a nine-month chemical dependency treatment program. KBF's parents visited Lynn, who observed that (1) their parenting skills were "getting better"; (2) the "visits during the past year and a half ha[d] improved significantly"[4]; and (3) although the parents' "ability to recognize the cues ha[d] improved, . . . it [was] still not where it should be." VRP at 28.

Based on a referral from his drug and alcohol counselor, KBF's father also sought mental health services at the Native American Rehabilitation Association. According to Lynn, the tribe's mental health provider referred KBF's father to counseling for an adjustment disorder and offered a psychotropic medication evaluation for a sleep disorder; according to KBF's father, however, he was not aware of an "adjustment disorder" or any services in which he was required to participate. VRP at 62. Ultimately, KBF's father did not participate in any mental health counseling, and he rejected the psychotropic medication evaluation in favor of his tribal doctor's recommendation that he take over-the-counter medication.

---

[4] VRP at 27.

While KBF's parents were living in the Aberdeen area, the Department provided them with a parenting coach.[5] But after they moved from the Aberdeen area in 2010, closer to the Siletz tribe, the Department did not provide another parenting coach. In 2012, Lynn attempted to schedule a psychological parenting assessment in the Vancouver area; but when KBF's permanent plan changed from reuniting the family to placing KBF in a guardianship, Lynn abandoned this parenting assessment process.

## II. CONVERSION OF DEPENDENCY TO GUARDIANSHIP

In March 2012, KBF's maternal grandparents filed a guardianship petition, seeking designation as KBF's guardians. At this point, KBF had been out of her parents' care for over two years. KBF's parents contested this guardianship petition.

At the July 26 guardianship hearing, Lynn testified that (1) he had ongoing concerns about KBF's parents' mental health; (2) he did not believe conditions would be remedied to allow KBF to return to her parents in the near future because they had been unable to secure employment or to maintain a stable living environment; (3) although the Department could have referred KBF's parents to a non-tribal psychologist for a current parenting assessment, it did not do so; (4) the Department did not request a home study through either Catholic Community Services or the tribe; and (5) he (Lynn) had no knowledge about the conditions of KBF's parents' residence. Significantly, although Lynn also testified that a dispositional order was on file with the court, he did not testify that any of the specific services that the Department had

---

[5] With the help of specialized educational services sought by KBF's grandparents, KBF's development improved substantially to average childhood development levels. But KBF's parents were not provided an opportunity to meet with the specialized education providers during their monthly visits with their daughter.

offered or provided to KBF's parents or that any of the services they had completed had also been court "ordered" under RCW 13.34.130[6] or .136.[7]

During KBF's father's guardianship hearing testimony, he (1) acknowledged that he had suffered from debilitating depression when the Department removed KBF from the family home, close in time to the deaths of his grandfather and brother-in-law; (2) asserted that his depression was no longer debilitating; and (3) claimed that his living situation was not "unstable" and was "progressing a lot" because he was no longer homeless. VRP at 69. The juvenile court entered findings of fact and conclusions of law, and it granted KBF's maternal grandparents' guardianship petition. KBF remained with her grandparents. Her father appeals.[8]

## ANALYSIS

KBF's father contends that the juvenile court erred in granting the guardianship petition because the Department failed to prove the allegations in subsections (2)(c)(iv) and (v) of RCW 13.36.040,[9] a relatively new statute that our legislature enacted in 2010 to allow any party to a dependency petition to request establishment of a guardianship. More specifically, KBF's father argues that (1) the Department failed to prove that it had offered the necessary services required

---

[6] The legislature recently amended RCW 13.34.130, LAWS OF 2013, ch. 254, § 1 (effective July 28, 2013); none of these amendments are relevant to our analysis.

[7] The record before us on appeal does not include a copy of this dispositional order or any other juvenile court order that specifies which offered services had been court-ordered under RCW 13.34.130 or .136.

[8] A commissioner of this court initially considered this appeal as a motion on the merits under RAP 18.14 and then referred it to a panel of judges.

[9] KBF's father challenges the Findings of Fact, subsections 2.8(d) and (e).

under the dependency and guardianship statutes; and (2) the Department failed to establish "what services were court-ordered" "by the dependency court under RCW 13.34.130 and .136." Br. of Appellant at 12. We agree.

### I. CONVERSION OF DEPENDENCY TO GUARDIANSHIP UNDER RCW 13.36.040

The instant appeal presents an issue of first impression: review of the legislature's relatively new, more flexible alternative to parental termination—guardianship under RCW 13.36.040. This 2010 statute requires the juvenile court to convert a dependency into a guardianship when it

> finds by a preponderance of the evidence[10] that it is in the child's best interests to establish a guardianship, rather than to terminate the parent-child relationship and proceed with adoption, or to continue efforts to return custody of the child to the parent.

RCW 13.36.040(2)(a).

In order to establish a guardianship under this statute, however, the legislature has expressly prescribed that the juvenile court find that the following requirements have been met:

> (c)(i) The child has been found to be a dependent child under RCW 13.34.030[11];
> (ii) A dispositional order has been entered pursuant to RCW 13.34.130;

---

[10] The Department's burden for establishing a guardianship is similar to that necessary to terminate parental rights. *See* RCW 13.34.180(1) and 13.34.190(2), respectively. We look to the law relevant to parental terminations for guidance in applying this new guardianship statute; in so doing, however, we note the higher burden of proof for a parental termination, where the Department must prove the allegations by clear, cogent, and convincing evidence, rather than by a mere preponderance of the evidence. *In re the Welfare of Sego*, 82 Wn.2d 736, 739, 513 P.2d 831 (1973). In dependency matters, we defer to the juvenile court's decision and uphold its findings of fact when supported by substantial evidence. *In re Dependency of K.S.C.*, 137 Wn.2d 918, 925, 976 P.2d 113 (1999).

[11] The legislature recently amended RCW 13.34.030, LAWS OF 2013, ch. 182, § 2, ch. 332, § 2 (effective July 28, 2013); none of these amendments are relevant to our analysis.

(iii) At the time of the hearing on the guardianship petition, the child has or will have been removed from the custody of the parent for at least six consecutive months following a finding of dependency under RCW 13.34.030;

*(iv) The services ordered* under RCW 13.34.130[12] and 13.34.136[13] have been offered or provided *and* all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been offered or provided;

(v) There is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future; and

(vi) The proposed guardian has signed a statement acknowledging the guardian's rights and responsibilities toward the child and affirming the guardian's understanding and acceptance that the guardianship is a commitment to provide care for the child until the child reaches age eighteen.

RCW 13.36.040(2)(a) and (c)(i)-(vi) (emphasis added). *See also* RCW 13.36.030.

## II. "NECESSARY SERVICES"[14]

The legislature has expressly required that, before the juvenile court can establish a guardianship under RCW 13.36.040, the Department must show by a preponderance of the evidence that it has offered or provided the dependent child's parents (1) the services "ordered" under RCW 13.24.130 (order of disposition) and RCW 13.34.136 (permanency plan); and (2) "all necessary services, reasonably available, capable of correcting the parental deficiencies

---

[12] RCW 13.34.130 provides that the court shall order disposition for a dependent child after a fact-finding hearing under RCW 13.34.110 to prove that a child is dependent within the meaning of RCW 13.34.030.

[13] RCW 13.34.136 provides that the supervising agency shall develop a permanency plan, which process will continue until a permanency planning goal is achieved or the dependency is dismissed; the plan shall "specify what services the parents will be offered to enable them to resume custody, what requirements the parents must meet to resume custody, and a time limit for each service plan and parental requirement." RCW 13.34.136(2)(b)(i).

[14] RCW 13.34.130 and RCW 13.34.136.

within the foreseeable future."[15] RCW 13.36.040(2)(c)(iv); *see also In re Dependency of T.R.*, 108 Wn. App. 149, 164-65, 29 P.3d 1275 (2001). Here, although the Department offered and provided many services to KBF's father, it failed to meet these statutory requirements.

## A. "Ordered" by the Court

At KBF's guardianship hearing, Lynn testified that (1) the juvenile court had entered a dispositional order, and (2) the Department had offered KBF's parents "chemical dependency, mental health evaluation and services [and] were going to set up parenting classes."[16] VRP at 22. But Lynn did not testify about content of this dispositional order or about any specific services that the court had "ordered" for KBF's parents under RCW 13.34.130 or .136. Nor does the record before us on appeal show which services the court ordered for KBF's parents. But the legislature expressly requires a showing of court "ordered" services, not merely "offered" services, in order for the juvenile court to establish a guardianship under RCW 13.34.140. *See* RCW 13.36.040(2)(c)(iv).

This lack of a record demonstrating that the juvenile court had ordered services for KBF's father under RCW 13.34.130 and RCW 13.34.136 leads us to conclude that the Department did not prove by a preponderance of the evidence what services, if any, the juvenile

---

[15] This requirement encompasses "all reasonable services that are available within the department or supervising agency, or within the community, or those services which the department has existing contracts to purchase" and which it "shall report to the court if it is unable to provide such services." RCW 13.34.136(2)(b)(vi); *see also In re Dependency of T.L.G. and C.L.G.*, 126 Wn. App. 181, 198, 108 P.3d 156 (2005).

[16] Although the record also *alludes* to a permanency plan, this plan is not included in the record on appeal. Thus, we have no information before us about the permanency plan's provisions and requirements, whether this plan was submitted to the court as required by RCW 13.34.136(2), and what services this plan may have ordered KBF's father to engage in.

court "ordered" KBF's father to engage in under the applicable statutes.[17] We hold, therefore, that the juvenile court lacked authority to convert KBF's dependency into a guardianship under RCW 13.36.040.

### B. "Offered and Provided" by the Department

Because the issue may arise again on remand, we address KBF's father's second argument—that the Department also failed to show that it had "offered or provided" him with "all necessary services[18] available, capable of correcting the parental deficiencies within the foreseeable future." RCW 13.36.040(2)(c)(iv). RCW 13.34.136 (1) provides:

> Whenever a child is ordered removed from the home, a permanency plan shall be developed no later than sixty days from the time the supervising agency assumes responsibility for providing services, including placing the child, or at the time of a hearing under RCW 13.34.130, whichever occurs first. *The permanency planning process continues until a permanency planning goal is achieved or dependency is dismissed. The planning process shall include reasonable efforts to return the child to the parent's home.*

(Emphasis added). The record before us on appeal, however, shows that after deciding to convert KBF's dependency into a guardianship, the Department stopped offering services to her father, *before* the guardianship was established.[19] This discontinuation of services was contrary

---

[17] We acknowledge that the record shows that the Department offered and provided KBF's father many services to correct his parenting deficiencies and that our vacating KBF's guardianship and, thus, remanding for further proceedings may appear unnecessary. But our duty is to implement the legislature's statutory requirements. If we have misconstrued its intent for this new guardianship procedure, then it will be for the legislature to clarify.

[18] Services "court-ordered under RCW 13.34.130 and RCW 13.34.136," RCW 13.36.040(2)(c)(iv).

[19] *See, e.g.*, Lynn's testimony that, when the permanent plan changed from reuniting the family to placing KBF in a guardianship, Lynn abandoned the parenting assessment process and, apparently, also stopped offering services to KBF's father.

No. 43922-1-II

to the legislature's express requirements in RCW 13.34.136(1) that the Department continue the permanency planning process, including "reasonable efforts to return the child to the parent's home," "until a permanency planning goal is achieved." Thus, the record does not show that the Department met this statutory requirement either..

Accordingly, we vacate the juvenile court's guardianship order and remand for further proceedings consistent with this opinion.

Hunt, J.

We concur:

Worswick, C.J.

Van Deren, J.

10