FILED
COURT OF APPEALS
DIVISION II

2014 NOV 25 AM 11: 21

STATE OF WASHINGTON

BY
DEPUTY

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| In the Matter of the Welfare of: | No. 45906-0-II |
| N.M. | |
| | PART PUBLISHED OPINION |
| A Minor Child. | |

WORSWICK, P.J. — H.M. is the mother of N.M., a child born in 2007.[1] H.M. appeals the juvenile court's order terminating her parental rights as to N.M. She argues that the juvenile court abused its discretion by denying her motion to continue the juvenile termination trial in order to attempt to establish a guardianship. She also argues that the Department of Social and Health Services failed to meet its burden to prove that (1) all necessary services capable of remedying parental deficiencies were offered or provided, (2) continuation of the parent and child relationship clearly diminished the child's prospects for early integration into a stable and permanent home, and (3) termination of H.M.'s parental rights was in the child's best interests. In the published portion of this opinion, we hold that the juvenile court did not abuse its discretion by denying the motion to continue the termination trial. In the unpublished portion of this opinion, we hold that substantial evidence supports all of the juvenile court's findings of fact on the challenged statutory elements required for termination. Accordingly, we affirm.

## FACTS

In October 2012, H.M. was arrested on an outstanding bench warrant. During her arrest, drugs and a firearm were found in the home. At the time of H.M.'s arrest, N.M. was removed from the home and placed in foster care. After approximately two months in foster care, N.M. was

_____

[1] N.M.'s father, J.M., died in June 2010.

placed in relative care with her paternal grandmother. In December 2012, the juvenile court entered an agreed order of dependency, and also entered a dispositional order requiring H.M. to engage in the following services: obtain a drug and alcohol evaluation and follow all treatment recommendations, obtain a psychological evaluation with a parenting component and follow all recommendations, and submit to random urinalysis (UA) testing.

Rion Tisino, the assigned social worker, referred H.M. to UA testing. H.M.'s first UA was positive for opiates and morphine. H.M. failed to appear at the remaining UA tests. Ultimately, the service provider terminated the service contract based on H.M.'s failure to participate.

Tisino also referred H.M. for a drug and alcohol evaluation. The drug and alcohol evaluation recommended intensive outpatient treatment. H.M. did not enter or participate in drug treatment until her subsequent incarceration on a drug conviction.

Tisino also referred H.M. for a psychological evaluation. H.M. failed to attend several appointments, but she was ultimately able to complete the first portion of the evaluation. The second portion of the evaluation required observation of H.M. and N.M. together. This second portion was not completed because the Department was unable to confirm an appointment with H.M. and, as a result, could not coordinate transporting N.M. to the evaluation.

Overall, H.M.'s participation in the dependency was minimal. In June 2013, the Department filed a petition for termination of H.M.'s parental rights. In September 2013, H.M. was sentenced on another drug charge. H.M. received a drug offender sentencing alternative (DOSA) sentence. Her anticipated release date from incarceration is January 2015.

The termination trial was scheduled for January 22, 2014. On the day of the termination trial, H.M.'s attorney moved to continue the hearing because he had not had a meaningful

opportunity to communicate with H.M. He also stated that the continuance was necessary to arrange for H.M. to appear by telephone from prison. The juvenile court granted the motion to continue and the termination trial was rescheduled for January 28.

On January 28, H.M. requested a 90-day continuance. H.M.'s attorney explained that he had recently discussed with H.M. the potential for a guardianship with N.M.'s paternal grandmother, and that H.M. wanted to pursue guardianship as an alternative to termination. The Department opposed the motion. The Department argued that a guardianship had never been identified as a potential permanency plan for N.M. and that it would be in N.M.'s best interests to move forward with termination. Tisino stated that after H.M. raised the potential for a guardianship, he discussed the option with N.M.'s grandmother and N.M.'s grandmother did not seem interested in a guardianship. He also stated that he had planned on speaking to N.M.'s grandmother about a final decision earlier that morning but that he had not been able to contact her. The juvenile court denied the motion to continue and proceeded with the termination trial.

At the termination trial, Tisino testified to the above facts. He also testified that N.M.'s grandmother was an adoptive placement and that the Department had completed an approved adoption home study. He stated that N.M. had been placed with her grandmother for almost the entire dependency and N.M. was thriving in her current environment. He also stated that N.M. could not be adopted unless H.M.'s parental rights were terminated.

Shelley Knick, N.M.'s court appointed special advocate (CASA), testified that N.M. was doing extremely well in her current placement and that an adoptive permanent placement with her grandmother was in N.M.'s best interests. She stated that she regularly talked to N.M. and that N.M. consistently stated that "she would like to see her mommy more but she's very happy staying

with her grandma." 2 Report of Proceedings (RP) at 67. H.M. asked Knick about a guardianship. Knick testified that her understanding was that a guardianship was not as permanent as an adoption because there was still the potential for the parent to regain custody of the child. She noted that this was not in N.M.'s best interests because:

> Right now, [N.M.] gets confused when her mother makes commitments to her that she's not able to fulfill, and so there have been occasions where they've spoken and she has promised her that she will be with her this summer. They'd be together again, getting her hopes up quite a bit that those options are available to her and that she might be coming home again. And every time that happens, then the child goes through the considerable grief and loss again, for which she's getting counseling when her mom's not able to fulfill that.
> Her grandma has been consistent in all of her promises and her ability to keep her promises, and I think that having that permanency would help her to accept her current situation with an openness and really less expectation on her mother to get well and demonstrate whatever she can in [N.M.'s] life without expecting her to some day return to her home and be cared for by her mom.

2 RP at 70.

H.M. testified that she had not properly dealt with her husband's death.[2] She stated that she was currently in a drug treatment program in prison and that she was engaging in individual therapy to deal with her grief and loss.

The juvenile court concluded that the Department had met its burden to prove all the statutory elements for termination by clear, cogent, and convincing evidence. Specifically, the juvenile court found that the Department had expressly and understandably offered and provided all services but that H.M. had failed to avail herself of the services while she was in the community. The juvenile court further found that H.M. was currently unfit because she was incarcerated and had not finished drug treatment. And that there was little likelihood that conditions would be

---

[2] H.M. testified at the termination trial by telephone from prison.

remedied in the near future because she was not going to be released from incarceration for at least a year and she had not availed herself of any services when they were offered by the Department.

As to whether the continuation of the parent and child relationship clearly diminished N.M.'s prospects for early integration into a stable and permanent home, the juvenile court found that the Department had met its burden because there was testimony establishing the child needed permanency and that N.M. could not be adopted until H.M.'s parental rights were terminated. The juvenile court entered an order terminating H.M.'s parental rights to N.M. H.M. appeals.

## ANALYSIS

H.M. argues that the juvenile court abused its discretion by refusing to grant a continuance to allow H.M. to confirm whether N.M.'s grandmother would be willing to serve as H.M.'s guardian.[3] We disagree. The juvenile court did not abuse its discretion in denying H.M.'s motion for a continuance, and the Department met its burden to prove all of the challenged elements for termination. Accordingly, we affirm the order terminating H.M.'s parental rights to N.M.

### I. MOTION TO CONTINUE

H.M. argues that, under our recent decision in *In re Welfare of R.H.*, 176 Wn. App. 419, 309 P.3d 620 (2013), the juvenile court erred by denying H.M.'s motion to continue because evidence of a guardianship is material evidence in a termination trial. However, as we explained in *R.H.*, terminations are fact specific and must be decided on a case by case basis. *R.H.*, 176 Wn. App. at 429. Therefore, denying a continuance sought for the purpose of exploring a guardianship is not a per se reversible error. Here, the juvenile court did not abuse its discretion because (1)

---

[3] We address H.M.'s arguments regarding the sufficiency of the evidence supporting the trial court's order terminating her parental rights in the unpublished portion of this opinion.

there was no identified guardian, and therefore there was no identified guardianship; and (2) the juvenile court's decision was reasonable considering the totality of the circumstances.

It is well-established that parents have a fundamental liberty and privacy interest in the care and custody of their children. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). And because of the constitutional rights at stake in a termination proceeding, "due process requires that parents have the ability to present all relevant evidence for the juvenile court to consider prior to terminating a parent's rights." *R.H.*, 176 Wn. App. at 426. In *R.H.*, we held that this due process right applied to motions to continue a termination trial in order for parents to establish an alternative to termination. *R.H.*, 176 Wn. App. at 428-29. We held that the trial court abuses its discretion if it violates a parent's substantive due process right to present material evidence by denying the parent's motion to continue. *R.H.*, 176 Wn. App. at 428-29. We did not, however, hold that as a matter of law, it will always be error for the juvenile court to deny a motion to continue which is sought to allow parents time to explore alternatives to termination. Therefore, we must review each case on a fact specific basis to determine if (1) the evidence the parent sought to admit was material and (2) the trial court manifestly abused its discretion by denying the motion to continue. If the trial court abused its discretion, we must determine whether the parent's procedural due process rights were violated because the error was prejudicial.

We review a decision to deny a continuance for a manifest abuse of discretion. *In re Dependency of V.R.R.*, 134 Wn. App. 573, 580-81, 141 P.3d 85 (2006). Under a manifest abuse of discretion standard, "[t]he trial court's decision will be affirmed unless no reasonable judge would have reached the same conclusion." *In re Marriage of Landry*, 103 Wn.2d 807, 809-10, 699 P.2d 214 (1985). When determining whether to grant a continuance, the juvenile court must

consider "'diligence, due process, the need for an orderly procedure, the possible effect on the trial, and whether prior continuances were granted.'" *R.H.*, 176 Wn. App. at 424-25 (quoting *V.R.R.*, 134 Wn. App. at 581). "Denial of a motion to continue violates due process if the parent can show 'either prejudice by the denial or the result of the trial would likely have been different if the continuance was granted.'" *R.H.*, 176 Wn. App. at 425 (quoting *V.R.R.*, 134 Wn. App. at 581).

H.M. argues that the juvenile court manifestly abused its discretion because, based on *R.H.*, evidence of a guardianship is material to whether the Department can meet its burden to prove either means of satisfying RCW 13.34.180(1)(f). However, in *R.H.* our holding was clear: "an *identified* guardianship is material. . . ." 176 Wn. App. at 423 (emphasis added). Our decision in *R.H.* does not hold that a trial court's refusal to continue a termination trial to allow a parent to explore the possibility of a guardianship is per se a manifest abuse of discretion. *R.H.* stressed the need for an identified guardianship before the evidence becomes material.

H.M. argues that there was an identified guardianship because N.M.'s grandmother was an identified permanent placement, N.M. was placed with her grandmother, and the Department had completed an adoption home study. However, N.M.'s grandmother had never agreed to or expressed interest in entering a guardianship rather than an adoption. This is opposite of the situation that existed in *R.H.* In *R.H.* the children's aunt had come forward and requested to enter into a guardianship for the children. 176 Wn. App. at 423. At the time of trial, the Department had been unable to complete the aunt's home study and establish the placement. *R.H.*, 176 Wn. App. at 423. H.M. asks us to hold that a permanent placement with possible potential to be a guardianship is the same as a potential guardian that has not yet become a stable, potentially permanent placement. We decline to do so. An "identified guardianship" requires at a minimum,

an identified guardian. Because there was not an identified guardianship, H.M. was not denied her due process right to present material evidence. Therefore, we review the additional factors such as diligence and the effect on proceedings to determine whether the trial court manifestly abused its discretion.

Here, there are issues regarding diligence and a possible effect on proceedings that were not present in *R.H.* In *R.H.*, the father requested a continuance one month before trial because he had successfully identified a guardian for the children, but the Department had failed to complete a home study or transition the children into the placement. 176 Wn. App. at 423. Accordingly, the delay in *R.H.* was not a result of the father's failure to diligently pursue a guardianship as an alternative to termination, but rather, the circumstances surrounding the logistics of the placement. In contrast, here, H.M. had failed to confirm that N.M.'s grandmother was willing to be a guardianship placement despite the fact that N.M. had been placed with her grandmother for most of the dependency. And the juvenile court had previously granted a continuance to allow H.M.'s attorney additional time to prepare the case.

Even under *R.H.*, the right to present evidence of a guardianship is not absolute. Where the failure to establish the evidence of a guardianship is due to lack of diligence or a failure to take advantage of prior continuances, the juvenile court does not manifestly abuse its discretion by denying the motion to continue. Because the juvenile court did not manifestly abuse its discretion by denying H.M.'s motion to continue, we do not need to reach the issue of prejudice. We hold that the trial court did not abuse its discretion by denying H.M.'s motion to continue the termination trial.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

## II. ELEMENTS OF TERMINATION

H.M. argues that the Department failed to prove that (1) all necessary services were expressly and understandably offered or provided because the second portion of a psychological evaluation was not completed, (2) continuation of the parent and child relationship clearly diminished N.M.'s prospects for early integration into a stable and permanent home, and (3) termination was in N.M.'s best interests.[4] We disagree.

We review an order of termination to determine whether substantial evidence supports the juvenile court's findings of fact. *In re the Welfare of Sego*, 82 Wn.2d 736, 739-40, 513 P.2d 831 (1973). Substantial evidence exists when there is evidence sufficient to persuade a fair-minded rational person of the truth of the declared premise. *Bering v. SHARE*, 106 Wn.2d 212, 220, 721 P.2d 918 (1986), *cert. dismissed*, 479 U.S. 1050 (1987). We do not make credibility determinations or weigh evidence. *Sego*, 82 Wn.2d at 739-40. In termination proceedings, the juvenile court has the advantage of having the witnesses before it, and therefore, we give deference to the juvenile court's decision. *In re the Welfare of Aschauer*, 93 Wn.2d 689, 695, 611 P.2d 1245 (1980).

---

[4] In her briefing H.M. assigns error to the trial court's finding that H.M. was in default. However, H.M. offers no argument of authority to support this assignment of error. RAP 10.3(a)(6). Therefore, we do not consider any issue related to the trial court's finding that H.M. was in default.

The juvenile court may order termination of a parent's rights as to his or her child if the Department establishes the six elements in RCW 13.34.180(1)(a) through (f)[5] by clear, cogent, and convincing evidence. Clear, cogent and convincing evidence exists when the ultimate fact at issue is shown to be "highly probable." *Sego*, 82 Wn.2d at 739 (quoting *Supove v. Densmoor*, 225 Or. 365, 372, 358 P.2d 510 (1961)). The Department also must prove by a preponderance of the evidence that termination of parental rights is in the child's best interests. RCW 13.34.190(1)(b).

---

[5] RCW 13.34.180(1) states:

A petition seeking termination of a parent and child relationship may be filed in juvenile court by any party, including the supervising agency, to the dependency proceedings concerning that child. Such petition shall conform to the requirements of RCW 13.34.040, shall be served upon the parties as provided in RCW 13.34.070(8), and shall allege all of the following unless subsection (2) or (3) of this section applies:

(a) That the child has been found to be a dependent child;

(b) That the court has entered a dispositional order pursuant to RCW 13.34.130;

(c) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;

(d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;

(e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. A parent's failure to substantially improve parental deficiencies within twelve months following entry of the dispositional order shall give rise to a rebuttable presumption that there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. The presumption shall not arise unless the petitioner makes a showing that all necessary services reasonably capable of correcting parental deficiencies within the foreseeable future have been clearly offered or provided. . . .

(f) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home.

10

A.    *Necessary Services*

Before terminating parental rights, the Department must prove that "the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided." RCW 13.34.180(1)(d). Even if the Department "inexcusably fails" to offer services to a willing parent, termination is still appropriate if the services "would not have remedied the parent's deficiencies in the foreseeable future." *In re Dependency of T.R.*, 108 Wn. App. 149, 164, 29 P.3d 1275 (2001) (citing *In re the Welfare of Hall*, 99 Wn.2d 842, 850-51, 664 P.2d 1245 (1983)).

H.M. argues that the Department failed to meet its burden to prove that all necessary services were expressly and understandably offered or provided because the Department failed to facilitate the completion of the second part of H.M.'s court ordered psychological evaluation. Here, the failure to complete the psychological evaluation was not due to the Department's failure to offer the service, rather it was due to H.M.'s failure to cooperate with the Department and the service provider. Tisino testified that it would be inappropriate to transport the child from Clarkston, where the child lives, to Tacoma (which is approximately 320 miles) without being able to confirm an appointment with H.M. Considering H.M.'s multiple failures to attend service appointments, not just for the psychological evaluation but also for UA tests and drug treatment, as well as H.M.'s failure to regularly communicate with Tisino, the Department did not fail to offer the service by refusing to transport N.M. to the evaluation without H.M. having a confirmed appointment.

H.M. relies on *In re Welfare of C.S.*, 168 Wn.2d 51, 225 P.3d 953 (2010), and *In re Guardianship of K.B.F.*, 175 Wn. App. 140, 304 P.3d 909 (2013), to support her argument that the Department inexcusably failed to offer necessary services, but her reliance on these cases is misplaced. In *K.B.F.*, the Department stopped providing the parent with services after the child's permanent plan changed to guardianship. 175 Wn. App. at 150. Here, the Department did not completely stop offering services. Not only did H.M. have other services available to her at the time, but the psychological evaluation would have been completed if H.M. had confirmed an appointment and communicated with the Department. In *C.S.*, the Department failed to offer the mother services to handle the child's special needs and then petitioned to terminate her parental rights based exclusively on her inability to meet the child's special needs. 168 Wn.2d at 55-56. As explained above, the Department did not fail to offer services, and H.M.'s parental rights were not terminated because of her failure to complete the psychological evaluation. Therefore, neither *C.S.* nor *K.B.F.* dictate the outcome of this case.

Substantial evidence supports the juvenile court's finding that all necessary services capable of correcting the parental deficiencies had been expressly and understandably offered or provided. H.M.'s challenge on this issue fails.

B.     *Continuation of the Parent and Child Relationship*

RCW 13.34.180(f) requires the Department to prove that continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home. In *R.H.*, we explained the two methods by which the Department may prove RCW 13.34.180(1)(f):

> The State can prove prospects for a permanent home exist but the parent-child relationship prevents the child from obtaining that placement. *See, e.g.,* [*In re*

*Dependency of] A.C.*, 123 Wn. App. [244, 250, 98 P.3d 89 (2004)] ("While a detrimental personal relationship would not be irrelevant, [RCW 13.34.180(1)(f)] is mainly concerned with the continued effect of the *legal* relationship between parent and child, as an obstacle to adoption; it is especially a concern where children have potential adoption resources."). Alternatively, the State can prove the parent-child relationship has a damaging and destabilizing effect on the child that would negatively impact the child's integration into any permanent and stable placement. *See, e.g.*, [*In re Dependency of*] *K.D.S.*, 176 Wn.2d [644, 659, 294 P.3d 695 [(2013)] (continuation of the harmful parent-child relationship "diminishes the likelihood K.D.S. will be emotionally and psychologically prepared to integrate into a stable and permanent home should one become available.").

176 Wn. App. at 428 (some alterations in original).

H.M. argues that the Department failed to prove that continuation of the parent and child relationship clearly diminished N.M.'s prospects for early integration into a stable and permanent home because N.M. was already placed in a stable home with her grandmother. We disagree.

In *In re Dependency of A.V.D.*, 62 Wn. App. 562, 569, 815 P.2d 277 (1991), the father also argued that the Department had failed to prove that continuation of the parent and child relationship clearly diminished his child's early integration into a stable and permanent home because the child was in a stable placement with her maternal grandmother. As the court explained:

Although she is being cared for by a close relative, [the child] is still a dependent child in foster care. As long as she is in foster care, her living situation will by definition remain temporary. She will not have a permanent home until her parents resume custody or their parental rights are terminated and she is adopted. Thus, while [the father's] assertion that [the child's] placement with her grandmother is a stable one is accurate, it does not undercut the trial court's determination that continuing his parental rights inhibits her ability to be integrated, as an adopted child, into that home.

*A.V.D.*, 62 Wn. App. at 569-70. The same is true here. Although N.M. is in a stable home, she is not in a permanent one.

13

Here, Tisino testified that N.M.'s grandmother was prepared to adopt her but adoption was legally impossible until H.M.'s parental rights were terminated.[6] Accordingly, substantial evidence supports the juvenile court's finding that continuation of the parent and child relationship clearly diminishes N.M.'s early integration into a stable and permanent home.

C.    *Best Interests of the Child*

After proving all six elements of RCW 13.34.180, the Department must prove by a preponderance of the evidence that termination of parental rights is in the best interests of the child. RCW 13.34.190(1)(b); *In re the Welfare of A.J.R.*, 78 Wn. App. 222, 228, 896 P.2d 1298, *review denied*, 127 Wn.2d 1025 (1995). Although parents have a fundamental liberty interest in the care and custody of their children, the paramount consideration in a termination proceeding is the welfare of the children. *In re Welfare of Young*, 24 Wn. App. 392, 395, 600 P.2d 1312 (1979), *review denied*, 93 Wn.2d 1005 (1980). Children have the right to a safe, stable, permanent home and a speedy resolution to dependency and termination proceedings. RCW 13.34.020. "When the rights of basic nurture, physical and mental health, and safety of the child and the legal rights of the parents are in conflict, the rights and safety of the child should prevail." RCW 13.34.020.

H.M. argues that the juvenile court erred by finding that termination of H.M.'s parental rights was in N.M.'s best interests. Essentially, she argues that because N.M. loves her mother and wants to spend more time with her, it was not in N.M.'s best interests to terminate H.M.'s

---

[6] The Department met its burden to prove that continuation of the parent and child relationship clearly diminishes N.M.'s prospects for early integration into a stable and permanent home because the legal relationship between H.M. and N.M. prevents N.M. from being adopted. Therefore, we do not address whether the CASA's testimony regarding the grief and loss N.M. suffers after her mother's broken promises would be sufficient evidence to prove that continuation of the parent and child relationship clearly diminishes N.M.'s prospects for early integration into a stable and permanent home based on the damaging or destabilizing nature of the relationship.

parental rights. But, both Knick and Tisino testified that it was important for N.M. to have permanence as soon as possible. And, they agreed that N.M. should be adopted by her grandmother. Therefore, there was substantial evidence supporting the juvenile court's finding that it was in N.M.'s best interests to terminate H.M.'s parental rights.

In sum, the trial court did not abuse its discretion by refusing to continue the termination trial to allow H.M. to explore a guardianship. In addition, the Department proved that all necessary services were expressly and understandably offered or provided to H.M., and that continuation of the parent and child relationship would clearly diminish N.M's prospects for early integration into a stable and permanent home. Finally, the Department proved that termination of H.M.'s parental rights was in the best interests of N.M.

Affirmed.

Worswick, P.J.

We concur:

Maxa, J.

Lee, J.